UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

VIRGINIA LOMNICKI, *et al.*

                Plaintiffs,

   -v-

CARDINAL McCLOSKEY SERVICES and THE CITY OF NEW YORK,

                Defendants.

Case No. 04-CV-4548 (KMK)

OPINION AND ORDER

---

Appearances:

Neil R. Kafko, Esq.
Kafko, Schnitzer & Sheeger
Bronx, New York
*Counsel for Plaintiff*

Brian Pelle Moran, Esq.
Deborah Salzberg, Esq.
Paul, Hastings, Janofsky & Walker LLP
New York, New York
*Guardian Ad Litem for Plaintiff Children*

Vanessa Mary Corchia, Esq.
Judah Zvi Cohen, Esq.
Armienti, DeBellis & Whiten
New York, New York
*Counsel for Defendant Cardinal McCloskey Services*

Suzanne M. Halbardier, Esq.
Barry McTiernan & Moore
New York, New York
*Counsel for Defendant The City of New York*

KENNETH M. KARAS, District Judge:

    Plaintiff Virginia Lomnicki ("Plaintiff") brings this action on behalf of herself and her minor children, Eugene, Robert, and Joseph Lomnicki ("Plaintiff's children"). After New York

State Family Court, New York County, determined that Plaintiff had neglected her children, and terminated Plaintiff's custodial rights,[1] Plaintiff's children were taken from her and placed in the custody of Defendants Cardinal McCloskey Services ("CMS") and the City of New York (collectively, "Defendants").  Plaintiff sues pursuant to 42 U.S.C. § 1983 for alleged violations of constitutional rights, including due process violations and race discrimination, in connection with the removal of her children from her custody.

Defendants move to dismiss the Second Amended Complaint pursuant to Rules 12(b)(1), 12(b)(6), 12(h)(3), and 9 of the Federal Rules of Civil Procedure.  For the following reasons, Defendants' motion to dismiss is GRANTED.

## I. Background

### A. Facts

The following facts are alleged in the Second Amended Complaint or taken from public records.  Facts alleged in the Second Amended Complaint (economical though they may be) are presumed true for the purposes of the instant motions.[2]

Plaintiff is the mother of three children: Eugene Lomnicki, age 14; Robert Lomnicki, age 11; and Joseph Lomnicki, age 10.  (Notice of Mot. of Def. Cardinal McCloskey Servs. ("CMS

---

[1] The Second Amended Complaint states that "[Plaintiff's] children were adjudicated to be neglected children and were placed in the custody of the defendants," without mentioning that it was the New York State Family Court that conducted the adjudication and ordered Plaintiff's children to be removed from her care.  (Second Am. Compl. ¶ 3.)  The Court takes judicial notice of this fact and of the relevant Family Court orders.  *See* Fed. R. Evid. 201(b); *Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000) (explaining that a court may take judicial notice of public records).

[2] The dearth of specifics in the Second Amended Complaint is notable.  For example, the Second Amended Complaint does not contain any dates of when illegal actions allegedly occurred.  It does not even list the ages of Plaintiff's children.

Mot.") Exs. K-M (Family Court orders).)  Plaintiff also has a daughter, Kimberly, who is not a subject of this case.  (*Id.* Ex. E.)  On July 31, 1998, after a caseworker filed a petition requesting a state court order determining Eugene, Robert, and Joseph to be neglected children, the Family Court issued an Order Directing Temporary Removal for each child, noting that "respondent mother [Plaintiff] uses excessive corporal punishment."  (Notice of Mot. of Def. New York City ("NYC Mot.") Exs. C-E ("the July 1998 Family Court Order").)  As a result of this order, the children were placed in the custody of the New York City Administration for Children's Services ("ACS").  In August 1999, following a hearing and an examination of the facts and circumstances of Plaintiff's family, Judge Susan Larabee of the New York State Family Court determined "that continuation in the children's home would be contrary to the best interests of the children," and accordingly Judge Larabee issued an Order of Disposition Neglect removing the children from Plaintiff's custody and placing the children in the custody of Defendants for a one-year period.  (CMS Mot. Ex. E ("the August 1999 Family Court Order").)  Defendants carried out the removal of Eugene, Robert, and Joseph from the custody of their mother, Plaintiff, and CMS took custody.  (Second Am. Compl. ¶¶ 2-3, 13.)  For each of the next three years, the Family Court issued Orders for Extension of Placement, extending the temporary placement of Plaintiff's Children with CMS.  (CMS Mot. Exs. F-H.)  Finally, on April 13, 2004, the Family Court ordered that "all [of Plaintiff's] parental rights be terminated and that all custody and guardianship be transferred to [the Department of Social Services] and Agency [CMS for] immediate adoption by current Foster Parents."  (*Id.* Ex. I.)

Plaintiff alleges that the removal of the children from her custody was "based on unproven allegations of abuse and/or neglect," (Second Am. Compl. ¶ 35) and that Defendants

3

removed her children from her because she is white, placing the children with non-white foster parents (Second Am. Compl. ¶ 13).

According to the Second Amended Complaint, Plaintiff has complied with all of Defendants' requests, including that she obtain counseling and attend parenting courses. (Second Am. Compl. ¶ 6.) Plaintiff asserts that she has no history of drug or alcohol abuse or a criminal record. (*Id.* ¶¶ 7, 9.) She is gainfully employed and has created a plan to provide for her children. (*Id.* ¶¶ 8, 10.)

B.  Procedural History

Plaintiff filed suit against Defendants on June 14, 2004. Plaintiff amended her complaint twice, filing the Second Amended Complaint on January 13, 2005. The Second Amended Complaint asserts four causes of action. First, Plaintiff alleges that Defendants improperly removed Plaintiff's children from her because she is white and placed them with non-white foster parents.[3] (*Id.* ¶ 13.) Second, Plaintiff asserts a violation of her due process right to care for her own children. (*Id.* ¶ 21.) Third, Plaintiff, on behalf of her children, alleges that Defendants have not provided proper foster care to the children. (*Id.* ¶ 26.) Fourth, Plaintiff charges that the children "were seized based upon unproven allegations of abuse and/or neglect." (*Id.* ¶ 35.)

---

[3]Plaintiff amended her original complaint to add this discrimination claim only after the Court suggested at the initial conference on November 19, 2004 that jurisdiction might be lacking. Plaintiff had submitted a default judgment prior to the conference because Defendants had not yet appeared. During the conference, the Court advised counsel for Plaintiff that the case had serious *Rooker-Feldman* problems, and citing *Phifer v. City of New York*, 289 F.3d 49 (2d Cir. 2002), noted that alleging racial discrimination was one of the few exceptions for federal litigants to avoid *Rooker-Feldman* dismissal in cases involving state parental custody disputes. It also bears noting that even though at oral argument counsel for Plaintiff described the discrimination claim as the "crux" of Plaintiff's case, Plaintiff never made any claims of discrimination in the five years of litigation in the family court.

At a conference on January 21, 2005, the Court raised concerns about a possible conflict of interest faced by Plaintiff's attorney who was at that time representing both Plaintiff and her children in connection with this litigation.  Following the conference, Plaintiff's counsel wrote to the Court and advised that he would withdraw from representing Eugene, Robert, and Joseph Lomnicki.  Thereafter, the Court appointed the firm of Paul, Hastings, Janofsy & Walker, LLP as guardian ad litem for the Lomnicki children.[4]  *Lomnicki v. Cardinal McCloskey Servs.*, No. 04-CV-4548 (S.D.N.Y. Dec. 13, 2005) (order appointing guardian).

On April 27, 2006, CMS filed its motion to dismiss pursuant to Rules 12(b)(1), 12(b)(6) and 9 of the Federal Rules of Civil Procedure, and on May 1, 2006, the City of New York filed its motion to dismiss pursuant to Rules 12(b)(1), 12(b)(6) and 12(h)(3).[5]

At oral argument, the Court was advised, for the first time, that Robert and Joseph have been adopted, thus divesting Plaintiff of any standing to pursue this case on their behalf.  However, Ms. Lomnicki is in the process of being reunified with Eugene.

## II.  Discussion

The instant motions seek dismissal for lack of jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and the *Rooker-Feldman* doctrine.  Additionally, Defendants argue that dismissal is proper pursuant to Fed. R. Civ. P. 12(b)(6) because Plaintiff's allegations are conclusory and do not state a claim upon which relief can be granted.

---

[4] Initially, there was another lawyer hired by the mother to represent the children, but he agreed that he too had a conflict.  *Lomnicki v. Cardinal McCloskey Servs.*, No. 04-CV-4548 (S.D.N.Y. Jan. 1, 2007) (so ordered stipulation substituting counsel).

[5] At a conference on July 13, 2006, counsel for Eugene, Robert, and Joseph indicated that the children would not oppose the motion to dismiss.  (Conf. Tr. 37, July 13, 2006.)

A. Standard of Review

When a defendant moves to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, and also moves to dismiss on other grounds such as Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted, the Court must consider the Rule 12(b)(1) motion first. *See Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990); *Adamu v. Pfizer, Inc.*, 399 F. Supp. 2d 495, 500 (S.D.N.Y. 2005).

That said, under both 12(b)(1) and 12(b)(6), "the court must accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." *Jaghory v. N.Y. State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997). When considering a motion to dismiss, courts are generally limited to examining the sufficiency of the pleadings, but where a party challenges the court's subject matter jurisdiction, "the court may resolve disputed jurisdictional fact issues by reference to evidence outside the pleadings." *Flores v. S. Peru Copper Corp.*, 414 F.3d 233, 255 n.30 (2d Cir. 2003) (quotations omitted). The party asserting jurisdiction, in this case Plaintiff, has the burden of showing by a preponderance of the evidence that the Court has jurisdiction. *See APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003).

If jurisdiction is established, the Court will then consider Defendant's Fed. R. Civ. P. 12(b)(6) motion to dismiss for failure to state a claim. In order to survive such a motion, Plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Id.* at 1965. "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 1969. A complaint will be dismissed where "it fail[s] *in toto* to render

plaintiffs' entitlement to relief plausible." *Id.* at 1973 n.14.

  B.  The *Rooker-Feldman* Doctrine and the Court's Subject Matter Jurisdiction

  Under the *Rooker-Feldman* doctrine, a federal district court may not review the judicial decisions of state courts.  The Supreme Court is the only federal court with appellate jurisdiction over state-court judgments, whereas the district court's jurisdiction is "strictly original."[6]  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) (quoting *Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923)).  The doctrine is named after two Supreme Court cases, *Rooker v. Fidelity Trust Co.*, 263 U.S. at 413, and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

  The Supreme Court recently discussed the doctrine in *Exxon Mobil*, 544 U.S. at 280.  Justice Ginsburg, writing for a unanimous court, observed that lower courts had sometimes construed the *Rooker-Feldman* doctrine "to extend far beyond the contours of the *Rooker* and *Feldman* cases, overriding Congress' conferral of federal-court jurisdiction concurrent with jurisdiction exercised by state courts, and superseding the ordinary application of preclusion law pursuant to 28 U.S.C. § 1738."  *Id.* at 283.  Accordingly, the *Exxon Mobile* Court held that the *Rooker-Feldman* doctrine "is confined to cases of the kind from which the doctrine acquired its name:  cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  *Id.* at 284.

  Thereafter, in *Hoblock v. Albany Co. Board of Elections*, 422 F.3d 77 (2d Cir. 2005), the

---

  [6]Habeas review is a notable exception to this jurisdictional rule.  *See* 28 U.S.C. § 2254(a); *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 n.8 (2005).

Second Circuit applied *Exxon Mobile* and reexamined the Circuit's approach to *Rooker-Feldman*. The Court of Appeals observed that, in the wake of *Exxon Mobile*, it was clear that *Rooker-Feldman* consisted of four requirements: (1) "the federal-court plaintiff must have lost in state court"; (2) "the plaintiff must complain of injuries caused by a state-court judgment"; (3) "the plaintiff must invite district court review and rejection of that judgment"; and 4) "the state-court judgment must have been rendered before the district court proceedings commenced." *Hoblock*, 422 F.3d at 85 (quotations omitted). The first and fourth requirements are "procedural" and the second and third requirements are "substantive." *Id.* If a case meets all four requirements, the Court will dismiss it pursuant to *Rooker-Feldman*.

The first requirement—that the federal plaintiff lost in state court—is plainly met under the facts of Plaintiff's case. Plaintiff was a respondent in three separate actions in Family Court regarding her children Eugene, Robert, and Joseph: docket numbers B-1455/03, B-1456/03, and B-1457/03 of the Family Court of the State of New York, New York County. (CMS Mot. Exs. K-M.) Defendants CMS and the City of New York, by the Commissioner of Social Services, were petitioners in those cases. (*Id.*) The Family Court concluded "that respondent mother [Plaintiff] has permanently neglected the subject child[ren] within the meaning of Section 384-b of the Social Services Law [and] that said respondent's rights to the subject child[ren]'s custody and guardianship be terminated and transferred and committed to the Commissioner of Social Services and the petitioning agency for purposes of adoption." (*Id.*) Clearly, then, Plaintiff is "a state-court loser" under the *Rooker-Feldman* doctrine. *See Exxon Mobile*, 544 U.S. at 283-84.

The Second Circuit suggested in *Hoblock* not only that the federal plaintiff must have been a party in the state-court action, but also that each of "the parties in the state and federal

8

action must be the same." *Hoblock*, 422 F.3d at 89. This prerequisite that both the federal plaintiff and the federal defendant were parties in the state-court action is also met here.[7] As mentioned above, Defendants were petitioners in the state-court proceeding, while Plaintiff was a respondent.[8]

The second requirement of *Rooker-Feldman* is that the plaintiff complains of injuries caused by a state-court judgment. This is "the core requirement" of *Rooker-Feldman*. *Id.* at 87. A plaintiff "complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it." *Id.* at 88. In this case, the First, Second, and Fourth causes of action asserted by Plaintiff are claims of injuries caused by the Family Court judgment. Each of these causes of action complain of the removal of Plaintiff's children from Plaintiff's custody. As noted above, it was the Family Court that ordered Plaintiff's children to be removed from her custody and placed in the custody of Defendants. Under *Hoblock*, this is not changed simply because it was Defendants, not the Family Court, who

---

[7]Complete identity of all parties does not appear necessary. *Hoblock* states that "the parties in the state and federal action must be the same" but not that "*all* parties" must be the same. *Hoblock*, 422 F.3d at 89. It would not make sense for a plaintiff to be able to frustrate *Rooker-Feldman* simply by naming an additional defendant who was not a party to the state court action. Further, as Judge Castel observed in *Bush v. Danziger*, No. 06 Civ. 5529, 2006 WL 3019572 (S.D.N.Y. Oct. 23, 2006), the Supreme Court "has held that *Rooker-Feldman* may not be asserted against a non-party to the underlying state-court proceeding, [but] the Court has not held that there must be complete identity of plaintiffs or parties in the two proceedings." *Id.* at *4 n.3 (citing *Lance v. Dennis*, 126 S. Ct. 1198, 1201 (2006) (per curiam)). Thus, while the children nominally are listed as plaintiffs here, their absence as parties in the Family Court is irrelevant.

[8]Again, it bears noting that counsel on behalf of the children is not opposing this motion, and, in fact, argues that Ms. Lomnicki has no standing to prosecute this case on behalf of the children.

actually carried out the removal. *Id.* ("In the child-custody example . . . if the state has taken custody of a child pursuant to a state judgment, the parent cannot escape *Rooker-Feldman* simply by alleging in federal court that he was injured by the state employees who took his child rather than by the judgment authorizing them to take the child."). The removal of Plaintiff's children from her custody was an action "produced by a state-court judgment." *See id.*

Plaintiff attempts to contravene the *Rooker-Feldman* doctrine by not mentioning the Family Court anywhere in her Second Amended Complaint and by alleging in a conclusory fashion that race discrimination formed the basis for the Defendants' actions. (Second Am. Compl. ¶ 13.) She argues that she "is not requesting the Federal Court herein to review the Family Court's determinations regarding custody, neglect and visitation of the children, but is seeking damages for a Civil Rights violation." (Pl.'s Mem. in Opp'n to Defs.' Mot. To Dismiss ("Pl.'s Mem.") 1.) Her argument cannot succeed. The fact that Plaintiff is alleging a new claim—discrimination—does not change the injury about which she complains. That injury—the removal of the children from her custody—was caused by the Family Court judgment.[9]  "[A] federal plaintiff cannot escape the *Rooker-Feldman* bar simply by relying on a legal theory not raised in state court." *Hoblock*, 422 F.3d at 86.

Similarly, Plaintiff does not avoid *Rooker-Feldman* by seeking damages instead of injunctive relief. In order to award damages to Plaintiff, the Court would have to review the decision of the Family Court. *See McLean v. City of New York*, No. 04 Civ. 8353, 2007 WL 415138, at *4 (S.D.N.Y. Feb. 6, 2007) ("[B]y seeking damages for violations of their parental

---

[9]Even if Plaintiff's discrimination claim can be more broadly construed, as suggested by her Affidavit in Opposition to Defendants' Motion ("Pl.'s Aff."), it would fail to state a claim. This is discussed below in Section D.

rights, plaintiffs are in effect asking this Court to reject the Family Court's findings and reverse its judgment ordering the children's removal from plaintiffs' custody."); *Phillips v. City of New York*, 453 F. Supp. 2d 690, 718 (S.D.N.Y. 2006) (explaining that *Rooker-Feldman* bars a federal suit seeking damages, "if the federal suit nonetheless complains of injury produced by a state-court judgment"). This case is precisely the type of "federal suit[] that purport[s] to complain of injury by individuals [but] in reality complain[s] of injury by state-court judment[]." *Hoblock*, 422 F.3d at 88.

The second requirement of *Rooker-Feldman*, however, does not pertain to Plaintiff's Third Cause of Action, which complains of the treatment that Plaintiff's children received once they were in Defendants' care, treatment that was not directed by the Family Court's orders. (Second Am. Compl. ¶¶ 25-32.) Plaintiff alleges that the children were abused by their step-families and otherwise did not receive proper foster care. (*Id.*) The complained-of injury here allegedly occurred after the Family Court judgment, but it was not "caused by" that state-court judgment. *See McKithen v. Brown*, 481 F.3d 89, 98 n.9 (2d Cir. 2007) (discussing the concept of causation in the *Rooker-Feldman* context). Accordingly, the Third Cause of Action survives dismissal on *Rooker-Feldman* grounds. *See McLean*, 2007 WL 415138, at *3 ("If *all* four [*Rooker-Feldman*] conditions apply, the federal court lacks subject matter jurisdiction to adjudicate the case.") (emphasis added).[10]

The Court turns now to the third requirement of the *Rooker-Feldman* doctrine to assess whether Plaintiff invites district court review and rejection of a state-court judgment. With

---

[10]Nonetheless, the Court will dismiss this cause of action on other jurisdictional grounds, as discussed in section C below.

regard to Plaintiff's First, Second, and Fourth Causes of Action, this requirement is plainly met. The Second Amended Complaint alleges that the determination to remove Plaintiff's children from Plaintiff's custody "was made despite the fact that plaintiff . . . had evidence and proof of her innocence to allegations of abuse and neglect" (Second Am. Compl. ¶ 5), that the "original [removal/custody] determination was made upon erroneous grounds" (*id.* ¶ 12), that the standards applied to plaintiff were "unfair, unjust, and illegal" (*id.* ¶ 20), and that the allegations that Plaintiff neglected her children were "unproven" (*id.* ¶ 35).  Essentially, Plaintiff is asking the Court to review the Family Court's decisions to remove Plaintiff's children from her home, place them in the temporary custody of Defendants, and ultimately revoke Plaintiff's parental rights and give custody to Defendants.  This the Court cannot do.  *See Hoblock*, 422 F.3d at 86 ("[A] federal suit is . . . barred by *Rooker-Feldman* . . . if it . . . seeks review and rejection of [a state-court] judgment.").  Thus, the third requirement of the doctrine is met.

Finally, the Court must consider whether the instant federal suit followed the state court judgment or was initiated prior to final judgment.  The Family Court order terminating Plaintiff's parental rights and committing custody to Defendants was issued and signed by Judge Larabee on April 13, 2004, but it was not entered by the Clerk of the Family Court until August 26, 2004.[11] Plaintiff filed the instant suit on June 14, 2004, but she filed the Second Amended Complaint on January 13, 2005, well after the judgment terminating Plaintiff's parental rights.  Because the filing of the Second Amended Complaint makes the initial complaint a nullity, *see Int'l Controls*

---

[11]The Court notes that this judgment was appealed, but that the judgment was final for *Rooker-Feldman* purposes.  *See Galtieri v. Kelly*, 441 F. Supp. 2d 447, 458 n.9 (E.D.N.Y. 2006) (noting that state-court judgment was final under *Rooker-Feldman* even though the state-court appeal was pending).

*Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977) ("[A]n amended complaint ordinarily supersedes the original and renders it of no legal effect."), the operative complaint, Plaintiff's Second Amended Complaint, followed the state court judgment. Moreover, there is no question that even Plaintiff's initial complaint was filed well after the August 1999 Family Court Order. That order—an "Order of Disposition Neglect"—removed Plaintiff's children from her custody and placed them in the custody of Defendants. It is the source of Plaintiff's alleged injuries, and is therefore the operative order for the purposes of *Rooker-Feldman*. Because New York state courts have adopted the position that "an order of disposition is synonymous with a final order or judgment," *see* Douglas J. Besharov, Practice Commentaries, McKinney's Consol. Laws of N.Y., N.Y. Jud. Ct. § 1112 (1999), the Court considers the August 1999 Family Court Order a final judgment subject to *Rooker-Feldman* dismissal.

In sum, with regard to the First, Second, and Fourth Causes of Action, each of the requirements of the *Rooker-Feldman* doctrine is met, and therefore the Court lacks jurisdiction over those claims.

### C.  Jurisdiction Over Plaintiff's Third Cause of Action

Plaintiff's Third Cause of Action alleges that Plaintiff's children received improper foster care and suffered abuse by their step-families. These claims are brought on behalf of Eugene, Robert, and Joseph Lomnicki. As Plaintiff's attorney admitted at oral argument on the instant motions, Plaintiff lacks standing to bring claims on behalf of the children, since her parental rights were terminated by the Family Court. The Court notes that it previously appointed a guardian ad litem for the children, *Lomnicki*, No. 04-CV-4548 (S.D.N.Y. Dec. 13, 2005), and the guardian, who is representing the children as counsel, has not opposed Defendants' motions.

13

In any case, Plaintiff appears to be claiming negligence and battery—common law torts. Because the Third Cause of Action concerns state torts, not federal law, and because the Plainitff has not asserted diversity jurisdiction, the Court lacks an independent basis for federal jurisdiction over these remaining claims. 28 U.S.C. §§ 1331, 1332. Having dismissed Plaintiff's First, Second, and Fourth Causes of Action for lack of subject matter jurisdiction (and the First Cause of Action for failure to state a claim, as discussed below), the Court also does not have a basis to exercise, and even if it had a basis it would not exercise, supplemental jurisdiction over the remaining claims. 28 U.S.C. § 1367 ("[I]n any civil action *of which the district courts have original jurisdiction*, the district courts shall have supplemental jurisdiction."). Therefore, the Third Cause of Action is dismissed for lack of subject matter jurisdiction.

### D.  Plaintiff's First Cause of Action Fails to State a Claim

Even were the Court to construe Plaintiff's Affidavit in Opposition to Defendants' Motion as an attempt at a Third Amended Complaint, and deem it to allege discriminatory conduct by ACS and CMS independent of carrying out the Family Court order—i.e., conduct relating to the initiation of court proceedings and the placement of the children—those claims would be dismissed for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). Despite the dubious nature of these claims—not ever made in state court or in the first two complaints in this action but only added after the Court mentioned *Phifer*, 289 F.3d at 49—the allegations would be assumed to be true. But the allegations fail to state a claim. First, they are conclusory and therefore insufficient. *See E & L Consulting, Ltd. v. Doman Indus.*, 472 F.3d 23, 28 (2d Cir. 2006) ("[C]onclusory statements are not a substitute for minimally sufficient factual allegations."). Second, they fail as to New York City because Plaintiff does not allege the

elements necessary to hold a municipality liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). According to *Monell*, municipalities "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Id.* at 694. Rather, a city may only be held liable if its "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury . . . ." *Id.* Yet, nothing in the Second Amended Complaint or Plaintiff's Affidavit remotely alleges the existence of an unconstitutional city policy or custom regarding foster children, and counsel conceded at oral argument that he has no basis to make such an allegation. Third, Plaintiff's claims fail as to CMS because they only allege racist comments by employees, not that Plaintiff or her children were ever discriminated against because of their race. There are no facts alleged that are "claimed to constitute intentional discrimination [or that give] rise to a plausible inference of racially discriminatory intent." *Yusuf v. Vassar College*, 35 F.3d 709, 713 (2d Cir. 1994). Fourth, as noted above, and as conceded by counsel at oral argument, Plaintiff has no standing to allege claims on behalf of the children. Therefore, even if Plaintiff's discrimination claims were to survive Fed. R. Civ. P. 12(b)(1) dismissal, they would be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).[12]

### III. Conclusion

Defendants' motion to dismiss for lack of subject matter jurisdiction pursuant to Rule

---

[12] Given the dearth of substance in Plaintiff's Affidavit, dismissal under 12(b)(6) would be with prejudice. Plaintiff has already had two opportunities to amend her complaint, and her Affidavit submitted in connection with the instant motions makes clear that she would be unable to state a claim of discrimination even if given another chance at filing a complaint. *Cf. Van Buskirk v. N.Y. Times Co.*, 325 F.3d 87, 91 (2d Cir. 2003) ("[A] court granting a 12(b)(6) motion should consider a dismissal without prejudice when a liberal reading of the complaint gives any indication that a valid claim might be stated.") (internal quotations removed).

12(b)(1) is GRANTED. Defendants' remaining motions to dismiss pursuant to Rules 12(b)(6), 12(h), and 9 of the Federal Rules of Civil Procedure are moot. The Clerk of the Court is directed to close this case.

SO ORDERED.

Dated:   July 20, 2007
         New York, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

16